## 68711. CHANNELL v. THE STATE.
(322 SE2d 356)

BANKE, Presiding Judge.

On appeal from her conviction of driving under the influence of alcohol, the appellant contends that the trial court erred in allowing into evidence testimony to the effect that she had failed to pass an "alka-sensor" roadside sobriety test administered to her at the scene of her arrest.

The appellant was detained after her vehicle was observed weaving across the centerline of the roadway during the early morning hours of March 13, 1983. The arresting officer testified that he could smell a strong odor of alcoholic beverage on the appellant's person and breath, that she was unsteady on her feet and that her speech was slurred and hard to understand. The officer was also permitted to testify, over objection, that he administered a roadside sobriety test to the appellant, which she failed to pass. The officer testified on cross-examination that this was an "alka-sensor (sic) field sobriety test." It does not appear that any other type of blood-alcohol test was administered to the appellant.

The appellant's objection to the testimony regarding the "alka-sensor" test was based on the State's failure to show that the test had been approved by the Georgia Department of Public Safety. Although the State's attorney informed the court, in response to the objection, that "the Rules and Regulations of the Department of Public Safety, which I have a certified copy of, . . . so designate it as the test that is mandated by the state for on-the-roadside sobriety tests," no such rules and regulations were introduced into evidence or otherwise made a part of the record.

Testifying in her own behalf, the appellant admitted that she had consumed a few beers on the night in question and that it was possible she had crossed over the centerline in the manner described by the officer. She maintained, however, that her erratic driving was due not to intoxication but to the fact that she was suffering from a painful uterus infection for which she had taken a pain medication. *Held*:

OCGA § 40-6-392 (a) (1) provides that, to be admissible as evidence, the results of a blood-alcohol test "shall have been performed according to methods approved by the Division of Forensic Sciences

of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose." Pursuant to Rule 570-9-.06 (3) of the Rules of the Department of Public Safety, as reported in the Official Compilation of the Rules and Regulations of the State of Georgia (1983 Revision), an initial alcohol screening test administered to a suspect at the scene of a D.U.I. investigation for the purpose of determining the existence of probable cause for an arrest, "shall be a breath test and will utilize a device of a design approved by the Director of the State Crime Laboratory." In the absence of proof of compliance with such regulations, it has been held that the results of a blood-alcohol test are inadmissible. See *State v. Johnston*, 160 Ga. App. 71, 72 (286 SE2d 47) (1981), aff'd 249 Ga. 413 (291 SE2d 543) (1982).

Because the required foundation was not laid in the case before us, we hold that the trial court erred in admitting the officer's testimony that the appellant "failed" the roadside sobriety test which he had administered to her. This court's decision in *Hunter v. State*, 143 Ga. App. 541, 543 (5) (239 SE2d 212) (1977), is not authority for a contrary result. In the first place, the initial screening test at issue in that case was merely a "balloon" test designed to confirm the presence of alcohol in the driver's body systems rather than to test for sobriety. In the second place, it does not appear that any rules regarding the administration of screening tests had been promulgated by the Department of Public Safety at the time that decision was rendered. Finally, the admission of the screening test results in that case was merely cumulative of the results of an intoximeter test which had been administered to the defendant, showing his blood-alcohol content to be 0.16 percent.

*Judgment reversed. McMurray, C. J., Quillian, P. J., Birdsong, Carley, Sognier, and Benham, JJ., concur. Deen, P. J., and Pope, J., dissent.*

DECIDED SEPTEMBER 19, 1984.

*Howard Tate Scott*, for appellant.
*Ken Stula, Solicitor, Kent Lawrence, Assistant Solicitor*, for appellee.

POPE, Judge, dissenting.
I respectfully dissent. Appellant's two enumerations on appeal assign error to the trial court's admitting the testimony of the arresting officer as to the results of an initial alcohol screening test. The basis of these enumerations is appellant's contention that the breath-testing device utilized by the arresting officer is not one which has

been approved by the Director of the Division of Forensic Sciences[1] and, thus, that the State failed to lay a proper foundation for the admission of the testimony complained of.

The testing device in question (an "alka-sensor") is, indeed, not one of those listed by the Department of Public Safety as approved for breath tests to determine the amount of alcohol in a person's blood. See Rules of the Department of Public Safety, Rule 570-9-.06 (5). It is important to note, however, that the subject testing device was not utilized for that purpose. Rather, the test was administered at roadside where the officer had stopped appellant and was used by the officer, in conjunction with other observations, in making his determination of probable cause to arrest appellant for driving while intoxicated. Nevertheless, initial alcohol screening devices such as the one in this case must also be approved by the Director of the Division of Forensic Sciences. Rules of the Department of Public Safety, Rule 570-9-.06 (3). Under this circumstance, I am compelled to agree with the majority's conclusion that the absence of proof of compliance with such rule renders inadmissible the results of such a test. See *State v. Johnston*, 249 Ga. 413, 415 (291 SE2d 543) (1982).

I would further note that the jury in this case was not clearly informed of the purpose of the initial alcohol screening test given to appellant. The State was permitted to ask the arresting officer "whether or not the defendant, Lynn Seagraves Channell, successfully passed the roadside sobriety test." The officer responded, "The test was not passed. It was failed." The officer then testified that, based upon his observations of appellant at roadside and while in his custody on the night in question, he believed "that she was definitely under the influence of alcohol, appeared to be very drunk, and stated that she had been drinking beer that night." Although the State did not attempt to rely on the screening test as a measure of appellant's degree of intoxication, this court has found that "the public is generally aware of the standard procedures attendant to arrest for [D.U.I.], i.e., that chemical tests are administered by law enforcement authorities to ascertain the suspect's level of intoxication." *Wessels v. State*, 169 Ga. App. 246, 247 (312 SE2d 361) (1983). Under the circumstances in this case, it is possible that the jury may have been misled as to the legal effect of the screening test, mistaking it for the chemical test required by law, OCGA §§ 40-5-55 and 40-6-392. See Op.

---

[1] I note in passing that appellant's objection at trial was that the subject testing device had not been approved by the Department of Public Safety. Although the rules and regulations regarding the techniques and methods of chemical testing for alcohol in the body are promulgated by the Department of Public Safety, these same rules provide that approval of any testing devices so utilized be given by the Director of the Division of Forensic Sciences (formerly the State Crime Laboratory), a division of the Georgia Bureau of Investigation. See Rules of the Department of Public Safety, Ch. 570-9. See also OCGA § 35-3-3.

Att'y Gen. 72-46 (1972). Compare *Hunter v. State*, 143 Ga. App. 541 (5) (239 SE2d 212) (1977), wherein the State "emphasized" that a roadside sobriety test was not designed to measure the amount of alcohol in the blood but that it was used to confirm the arresting officer's belief that alcohol was present in the driver's body systems. Although the State made similar comments in the case at bar, they were made in argument outside the presence of the jury. I recommend that in cases where a proper foundation has been laid for the admission of testimony regarding an initial alcohol screening test, the jury should be instructed as to its limited applicability.

However, I do not view the admission of the objectionable testimony in this case as requiring a reversal of appellant's conviction. In addition to the testimony of the arresting officer cited by the majority, the officer also testified that he noticed several empty beer cans in the back seat of appellant's car. Appellant herself testified that she had had a few beers, taken in conjunction with pain medication, on the night in question. When asked if she recognized that she was "under the influence" shortly before she was stopped, she testified: "Well, I was really more in pain than I was, you know, feeling high." Clearly, the evidence of appellant's guilt presented at trial was overwhelming. I believe it highly probable that the error in admitting the objectionable testimony did not contribute to the judgment. See generally *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). Accordingly, I would affirm the judgment of the trial court. See *Collins v. State*, 154 Ga. App. 651 (4, 6) (269 SE2d 509) (1980); *Garrett v. State*, 146 Ga. App. 610 (2) (247 SE2d 136) (1978). See also *Hawkins v. State*, 146 Ga. App. 312 (3) (246 SE2d 343) (1978).

I am authorized to state that Presiding Judge Deen joins in this dissent.